IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HIRTLE CALLAGHAN HOLDINGS, | : | |
| ET AL. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 18-2322 |
| CURT R. THOMPSON, ET AL. | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                    **MARCH 26, 2021**

By Order dated February 3, 2021, Plaintiffs' Motion to Compel (ECF No. 22) was granted in part.  (ECF No. 30.)  On February 10, 2021, Defendants timely filed a Motion for Reconsideration.  (ECF No. 32.)  Defendants argue that the portion of the February 3 Order requiring the production of Defendants' and non-party Donald Callaghan's tax returns and Defendants' financial statements should be stricken because it constitutes manifest injustice. Plaintiffs oppose the Motion for Reconsideration.  (ECF No. 34.)  For the following reasons, the Motion will be granted in part and denied in part.

I.      **BACKGROUND**

Plaintiffs Hirtle Callaghan Holdings Inc. and Hirtle, Callaghan & Co., LLC (collectively, "Hirtle") brought claims against one of their former employees, Curt Thompson, for breach of contract and misappropriation of trade secrets.  Plaintiffs allege that after Thompson resigned from Hirtle, he solicited Hirtle customers for a competing company in violation of covenants contained in stock award agreements that he executed with Hirtle.  For their misappropriate of trade secrets claims, Plaintiffs seek damages for actual loss and unjust enrichment as well as

exemplary and punitive damages.[1]  For their breach of contract claims, Plaintiffs seek monetary damages, a permanent injunction against Thompson, and a declaratory judgment that Hirtle need not provide compensation to Thompson.  After leaving Hirtle, Thompson began a new venture, Global Strategic Investment Solutions, LLC, with former Hirtle founder, shareholder, and principal Donald ("Don") Callaghan.  Plaintiffs also brought claims against (1) Global Strategic Investment Solutions, LLC ("GSIS"), the company that employed Thompson after he left Hirtle; (2) Thompson's wife, Lisa M. Thompson, in her position as co-trustee of the CLT Family Trust; and (3) the CLT Family Trust.  (ECF No. 1.)  Plaintiffs have advised that they will seek to add Don Callaghan as a defendant in an Amended Complaint.  (Joint Case Report at 10, ECF No. 27.)

The Parties had a discovery dispute over several categories of documents in Plaintiffs' document production request.  Plaintiffs requested: (1) tax returns from Thompson, GSIS, and Callaghan from 2018 to present; (2) income sources, loans, and advances from partners/members to GSIS and distributions from GSIS to Thompson and Callaghan from December 1, 2017 to present; and (3) financial statements from GSIS.  Plaintiffs argued that these financial and tax

---

[1] Plaintiffs request both exemplary and punitive damages in Count V, which alleges misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA").  (Compl. 13-14, ECF No. 1.)  The language in the Defend Trade Secrets Act allows for exemplary damages.  *See* 18 U.S.C. § 1836(b)(3)(C).  Courts have recognized the two terms as synonymous.  *See Adv. Fluid Sys., Inc. v. Huber*, 958 F.3d 168, 173 n.1 (3d Cir. 2020) (citation and internal citation omitted) (The terms 'exemplary damages' and 'punitive damages' are synonymous, but the [Pennsylvania Uniform] Trade Secrets Act uses the former term while common law causes of action tend to invoke the latter."); *Rossi v. Sun Ref. & Mktg. Corp.*, No. 94-3037, 1995 U.S. Dist. LEXIS 225, at *36-38 (E.D. Pa. Jan. 10, 1995) ("We fail to appreciate the distinction defendant seeks to draw between 'punitive' and 'exemplary' damages.  The terms are synonymous according to Black's Law Dictionary.").  Still, their legal standards can differ.  *See, e.g., Adv. Fluid Sys. v. Huber*, 295 F. Supp. 3d 467, 493-94 (M.D. Pa. 2018) (finding PUTSA defined exemplary damage standard as "willful and malicious" misappropriation of trade secrets while breach of fiduciary duty required "outrageous" and "evil motive" for punitive damages).  For the purposes of this Motion, we will use the terms interchangeably.

documents were relevant for their damages claims.  Defendants argued that they were not

relevant because Plaintiffs are only entitled to lost profits damages.  The Court ordered

production of the financial and tax documents based upon the following:

> With regard to the discovery of tax returns, the Court must balance the competing interests of the taxpayer's privacy expectation and the broad nature of pretrial discovery. *See Haas v. Kohl's Dep't Store, Inc.*, Civil Action No. 08-CV-2507, 2009 U.S. Dist. LEXIS 57186, at *2 (E.D. Pa. July 7, 2009) (citing *DeMasi v. Weiss*, 669 F.2d 114, 119 (3d Cir. 1982)). This is a two-part inquiry. First, the movant must show that the information is relevant. *See Terlescki v. E.I. Dupont de Nemours & Co.*, Civ. No. 90-6854, 1992 U.S. Dist. LEXIS 4213, at *3 (E.D. Pa. Apr. 7, 1992). Next, the party opposing production must show that there is no compelling need for the returns because the information is readily available from other sources. *Id.* Plaintiffs argue that the tax and financial/distribution information would "be vital to permitting Plaintiffs to determine the full amount of damages caused by the improper solicitations." Defendants agree, *arguendo*, that "Hirtle's damages are . . . limited to net income earned by Defendants from Hirtle's former clients that, allegedly, were wrongly solicited." (Defs.' Opp'n at 7.) However, Defendants argue that the categories of information requested would not provide this specific information and are therefore irrelevant. Nonetheless, Defendants do not provide any alternative sources of information that would supplant the requested categories. As such, we find that Plaintiffs have met their burden of showing relevance and there is a compelling need for the production of these documents. Therefore, the motion is granted as to these categories.

(Feb. 3 Order at 3, ECF No. 30.)

The Motion to Compel was denied as to all other categories of documents.  Upon

Defendants' representation, we concluded that Defendants had already produced the documents

for several categories.  We also denied Plaintiffs' request for documents showing GSIS' client

list, finding that it was only relevant as to former Hirtle clients.  Plaintiffs already possess

information about Hirtle's former clients, as those clients would have made it known to Hirtle

that they left to join GSIS.

The Order provided that Plaintiffs had ten days after the documents were turned over to

file an amended complaint.  Defendants filed the instant Motion for Reconsideration seven days

after the Order on the Motion to Compel.  A telephone conference was held on February 17,

2021.  (ECF No. 35.)

## II.    LEGAL STANDARD

Federal district courts have inherent power over interlocutory orders and may modify,

vacate, or set them aside "when it is consonant with justice to do so."  *United States v. Jerry*, 487

F.2d 600, 605 (3d Cir. 1973); *see also State Nat'l Ins. Co. v. County of Camden*, 824 F.3d 399,

406 (3d Cir. 2016) ("Apart from Rule 60(b), the District Court has the inherent power to

reconsider prior interlocutory orders."), *contrast Kapko Mfg. Co., Inc. v. C & O Enterprises, Inc.*,

773 F.2d 151, 153-54 (3d Cir. 1985) (explaining that relief under Rule 60(b) is limited to final

orders which are independently "final decisions" under 28 U.S.C. § 1291).  "The purpose of a

motion for reconsideration is to correct manifest errors of law or fact or to present newly

discovered evidence."  *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985) (citation

omitted).  "Because of the interest in finality, however, courts should grant motions for

reconsideration sparingly."  *Rottmund v. Continental Assur. Co.*, 813 F. Supp. 1104, 1107 (E.D.

Pa. 1992) (citation omitted).  Courts should only grant these motions where: (1) there has been

an intervening change in controlling law; (2) new evidence has become available; or (3) there is

a need to correct a clear error of law or fact or prevent manifest injustice.  *Max's Seafood Cafe*

*ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

To show clear error or manifest injustice, a party "must base its motion on arguments that

were previously raised but were overlooked by the court."  *United States v. Jasin*, 292 F. Supp.

2d 670, 676 (E.D. Pa. 2003).  It is improper to ask the court to "rethink what [it] had already

thought through – rightly or wrongly."  *Mitchell Chartock and Tikico, LLC v. Amtrak*, No. 14-

2327, 2015 U.S. Dist. LEXIS 142809, at *4 (E.D. Pa. Oct. 20, 2015).  In other words, "[p]arties

are not free to relitigate issues the court has already decided." *Smith v. City of Chester*, 155 F.R.D. 95, 97 (E.D. Pa. 1994).  In addition, "[a]ny litigant considering bringing a motion to reconsider based upon . . . [clear error and manifest injustice] should evaluate whether what may seem to be a clear error of law is in fact simply a disagreement between the Court and the litigant." *Jasin*, 292 F. Supp. 2d at 676 (citations omitted).

## III.   DISCUSSION

Defendants make three arguments.  First, Defendants contend that Don Callaghan's tax returns cannot be compelled because he is not a party to the action.  Second, Defendants again argue that their tax returns and financial statements are immaterial and irrelevant to Plaintiffs' case because Plaintiffs are only entitled to lost profits damages.  Finally, Defendants argue that this Court's Order requiring production of Defendants' entire tax returns for several years is overbroad and causes manifest injustice.  Defendants state that the time period for any alleged misappropriation would end in 2019.  (Defs.' Mot., ECF No. 32.)

Plaintiffs contend that Defendants have not met the reconsideration standard and the Court's Order on the Motion to Compel was appropriate as a whole.  Plaintiffs argue that Don Callaghan is a co-owner of GSIS and, as such, can be compelled to turn over his personal tax returns.  Plaintiffs also argue that Defendants' tax returns and financial documents are relevant to Plaintiffs' claims for the exemplary and unjust enrichment damages encompassed in their allegation of misappropriation of trade secrets.  Finally, Plaintiffs argue that Thompson's continuing violations extend the non-solicitation period to the present day.

### A.   The Court Cannot Compel a Non-Party to Produce Their Tax Returns.

The scope of discovery is set out in Federal Rule of Civil Procedure 26(b).  "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or

defense and proportional to the needs of the case . . . . Information within this scope of discovery need to be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).  "It is a well-established principle that the scope and conduct of discovery are within the sound discretion of the trial court."  *Borden Co. v. Sylk*, 410 F.2d 843, 845 (3d Cir. 1969).

Defendants point out that Don Callaghan is not a party to this case.  Plaintiffs plan to add Callaghan, however that has not yet happened.  As such, Defendants' Motion for Reconsideration will be granted in part in order to correct a clear error of fact.

Callaghan is not a party to the suit, and the Court does not have personal jurisdiction over him.  Moreover, Callaghan is not a party to the Confidentiality Stipulation and Protective Order in effect in this case.  When discovery is sought from a non-party, "[b]roader restrictions may be necessary to prevent a non-party from suffering harassment or inconvenience."  *See Avago Techs. U.S., Inc. v. IPtronics, Inc.*, 309 F.R.D. 294, 297 (E.D. Pa. Sept. 15, 2015) (citing *Frank v. Honeywell Int'l Inc.*, No. 15-172, 2015 U.S. Dist. LEXIS 106453 at *4 (E.D. Pa. Aug. 13, 2015)).  Discovery on a nonparty must be conducted by subpoena pursuant to Federal Rule of Civil Procedure 45.  *See General Ins. Co. of America v. Eastern Consol. Utilities, Inc.*, 126 F.3d 215, 221 (3d Cir. 1997) ("A non-party, by definition, is not a participant to the litigation and, when a non-party refuses to provide discovery, no claim has been asserted by or against it.").

Plaintiffs argue that Callaghan can be compelled to produce documents pursuant to Federal Rule of Civil Procedure 30 because he is a managing agent of GSIS.  Rule 30 allows a party to depose another party and, in the case of an organization, the organization must designate "one or more officers, directors, or managing agents . . . who consent to testify on its behalf." Fed. R. Civ. P. 30(b)(6).  Callaghan has not been designated as GSIS's corporate designee under

Rule 30.  Accordingly, Defendants' Motion to Reconsider this issue is granted.  The portion of the February 3 Order compelling production of Mr. Callaghan's tax returns will be vacated.

**B.**      **Defendants' Tax and Financial Information is Relevant and Discoverable.**

Defendants rely on the same case law that they submitted in opposition to the Motion to Compel to support their argument that Plaintiffs will ultimately only be entitled to lost profits damages.  (ECF No. 32 at 6-7 (citing *Fishkin v. Susquehanna Partners, G.P.*, 563 F. Supp. 3d 547, 590 (E.D. Pa. 2008); *Centrix HR, LLC v. On-Site Staff Mgmt., Inc.*, 349 Fed. App'x 769, 775 (3d Cir. 2009).)  These cases address issues related to post-trial damages and not to discovery.  The cases cited by Defendants are inapposite to the current posture of this case.

Plaintiffs' Complaint alleges claims under two statutes:  the Defend Trade Secrets Act[2]

---

[2] The Defend Trade Secrets Act provides:

(B) award—

   (i)(I) damages for actual loss caused by the misappropriation of the trade secret; and
   (II) damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss; or
   (ii) in lieu of damages measured by any other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret;

(C) if the trade secret is willfully and maliciously misappropriated, award exemplary damages in an amount not more than 2 times the amount of the damages awarded under subparagraph (B); and

(D) if a claim of the misappropriation is made in bad faith, which may be established by circumstantial evidence, a motion to terminate an injunction is made or opposed in bad faith, or the trade secret was willfully and maliciously misappropriated, award reasonable attorney's fees to the prevailing party.

18 U.S.C. § 1836(b)(3)(B)-(D).

and the Pennsylvania Uniform Trade Secrets Act.[3]  (ECF No. 1.)  These statutes permit damages for unjust enrichment and actual loss, and for exemplary damages.

A defendant's wealth is relevant in calculating exemplary damages.  "[T]he purposes of exemplary damages are to punish for a past event and to prevent future offenses, and the degree of punishment or deterrence resulting from a judgment is to some extent in proportion to the means of a guilty person."  *Vivino v. Everlast Sporting Goods Mfg. Co.*, No. 87-1161, 1987 U.S. Dist. LEXIS 8730, at *4-5 (E.D. Pa. Sept. 28, 1987) (citation omitted) (finding evidence of defendant's net worth "clearly relevant" to issue of punitive damages).  Unjust enrichment, on the other hand, is calculated according to the needs of a particular case.  *See PPG Indus., Inc. v. Jiangsu Tie Mao Glass Co.*, No. 15-965, 2020 U.S. Dist. LEXIS  55687, at *49-50 (M.D. Pa. Mar. 31, 2020) ("When it comes to unjust enrichment PUTSA's text does not mandate a particular method for valuing a defendant's gains from misappropriation.").

---

[3] Section 5304 of the Pennsylvania Uniform Trade Secrets Act provides:

(a) Monetary damages.—Except to the extent that a material and prejudicial change of position prior to acquiring knowledge or reason to know of misappropriation renders a monetary recovery inequitable, a complainant is entitled to recover damages for misappropriation. Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.

(b) Exemplary damages.—If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subsection (a).

12 Pa. Cons. Stat. Ann. § 5304.

Here, Defendants' tax returns are part of Defendants' full financial picture.  *See Bro-Tech Corp. v. Thermax, Inc.*, No. 05-2330, 2007 U.S. Dist. LEXIS 56208, at *12 n.17 (E.D. Pa. Aug. 2, 2007) ("Defendants should receive an opportunity to review the tax returns, to determine how the information contained therein fits into the overall damages puzzle created by Plaintiffs' allegations.").  The Complaint alleges that "[i]nformation relating to Hirtle's customers (including their contact information, investments, accounts, and preferences) and its investment strategies constitute trade secrets," which Hirtle alleges Thompson has shared with GSIS and intends to continue to use in competition with Hirtle.  (Compl. ¶¶ 57-58.)  It follows that based on this claim, financial information related to GSIS' profit from the allegedly misappropriated clients is relevant to Plaintiffs' damages for discovery purposes.  Equally relevant to exemplary damages is information related to Plaintiffs' overall financial condition, including their tax returns.

### C.     Production of Defendants' Tax Returns Does Not Constitute Manifest Injustice.

As contemplated in the February 3 Order, Defendants' financial and tax information is relevant so that Plaintiffs may determine the "full amount of damages" allegedly "caused by improper solicitations."  (Feb. 3 Order at 3.)  That includes Plaintiffs' claim for exemplary damages.  Information regarding damages is as discoverable as information pertaining to liability.  *See Caruso v. Coleman Co.*, 157 F.R.D. 344, 348 (E.D. Pa. 1994).

Courts have compelled net worth information when exemplary or punitive damages are at issue before a plaintiff has made a *prima facie* showing of entitlement to such damages.  *Angulo v. Tarapchak*, No. 18-736, 2018 U.S. Dist. LEXIS 146441, at *7 (M.D. Pa. Aug. 28, 2018) (citations omitted) (compelling defendant's tax returns and asset and debt statements and finding "the weight of authority of more recent origin supports the position that discovery of financial

information is allowed before a court makes a finding regarding the award of punitive

damages"); *Hayfield v. Home Depot U.S.A., Inc.*, 168 F. Supp. 2d 436, 458 (E.D. Pa. 2001)

(citing *Kirkbride v. Lisbon Contractors, Inc.*, 555 A.2d 800, 803 (Pa. 1989)); *see also Grosek v.*

*Panther Transp., Inc.*, 251 F.R.D. 162, 166-67 (M.D. Pa. 2008) (ordering production of tax

returns and other financial information because of relevance to punitive damages claim); *Caruso*,

157 F.R.D. at 348-49 (concluding that plaintiff was entitled to pretrial discovery of defendant's

financial information prior to determination of defendant's liability for punitive damages and

without *prima facie* showing); *Clark v. Pennsylvania*, No. 93-1365, 1994 U.S. Dist. LEXIS

10180, at *6-7 (E.D. Pa. July 21, 1994) (same); *E.J. Lavino & Co. v. Universal Health Servs.,*

*Inc.*, No. 89-2717, 1991 U.S. Dist. LEXIS 18505, at *2-3 (E.D. Pa. Dec. 20, 1991) (same).

Compelling production of tax returns and financial records for a relevant discovery purpose does

not constitute manifest injustice.

Defendants argue that if any tax documents should be disclosed, they should be limited to

GSIS' Schedule K-1s.[4]  Defendants do not argue that the K-1s would substitute for the other

financial information that Plaintiffs requested.  It is apparent from the information available on

the K-1s that they will not accurately reflect Defendants' full financial condition.  As stated in

the February 3 Order, Defendants have failed to show that this information is readily available

from other sources.  *See HSI, Inc. v. 48 States Transport, LLC*, No. 19-352, 2020 U.S. Dist.

LEXIS 64, at *4-7 (M.D. Pa. Jan. 2, 2020) (finding tax returns relevant and that opposing party

did not meet burden of showing the information available in tax returns could be obtained from

other sources); *Fort Washington Res., Inc. v. Tannen*, 153 F.R.D. 78, 80 (E.D. Pa. 1994)

---

[4] According to the IRS website, "[t]he partnership files a copy of Schedule K-1 (Form 1065) with the IRS to report your share of the partnership's income, deductions, credits, etc." IRS, https://www.irs.gov/forms-pubs/about-schedule-k-1-form-1065 (last visited Feb. 24, 2021).

(balancing privacy interest with broad discovery interest, explaining two-part test for disclosure of tax returns, and finding that "Defendant has not shown an alternative source from which Plaintiff can obtain the relevant information").

Defendants also argue that only financial documents through June 30, 2019 should be disclosed because that date marks the end of the non-solicitation agreement, which is eighteen months after the alleged violations.  This is an issue that was clearly available to Defendants when they opposed the original Motion to Compel.  Notwithstanding that fact, Defendants do not state that providing this information would be an undue burden.

The financial condition of a company is best ascertained through information from a number of years.  *See Grosek*, 251 F.R.D. at 167 (finding punitive damages are allowed at discovery stage and "information from a number of years would provide a better assessment of the true financial condition than information only from [one] year . . . .  Defendants may have had an exceptionally good year . . . leading to an unfair apportionment of damages given the real financial circumstances of the company").  Because Plaintiffs allege a claim for exemplary damages, discovery of Defendants' financial condition as shown by years of financial records is relevant and appropriate.  Disclosing Defendants' most recent years' financial filings gives the most up-to-date view of their financial status.  Moreover, the non-solicitation clause of the Stock Award Agreement contained an extension provision, which provides that "[i]f the Award Recipient violates the provisions of this Section, the periods described therein shall be extended by that number of days which equals the aggregate of all days during which at any time any such violations occurred."  (*See* Compl. Ex. A.)  Plaintiffs allege continuing violations.  Defendants' recent financial information after June 30, 2019, is relevant to Plaintiffs' damages, is discoverable, and can properly be compelled.

11

Defendants also argue that this Court overlooked the privacy interests implicated in the decision concerning tax returns.  We disagree.  We acknowledged the taxpayer's privacy expectation, as laid out in *DeMasi v. Weiss*, 669 F.2d 114, 119 (3d Cir. 1982).  (*See* Feb. 3 Order 3.)  In *DeMasi*, the Third Circuit recognized the balancing of factors, including "plaintiff's need for the information, its materiality, and its relevance," against the defendant's important privacy interest and the fact that "public policy favors the non-disclosure of tax returns."  *Id.* (citations omitted).  Accordingly, we balanced the factors and made this decision using the appropriate two-part test.   (*See* Feb. 3 Order 3 (citing *Terlescki v. E.I. Dupont de Nemours & Co.*, Civ. No. 90-6854, 1992 U.S. Dist. LEXIS 4213, at *3 (E.D. Pa. Apr. 7, 1992)).)  Nothing has changed and Defendants have not presented any new information that would justify reconsideration.  We note again that any disclosures will be covered by the parties' Confidentiality Stipulation and Protective Order.  Thus, the information will be protected from public disclosure.  (*See* ECF No. 20.)

Accordingly, Defendants' Motion for Reconsideration will be denied as to Defendants' tax returns and financial information.

As a point of clarification, Defendants may redact social security numbers, home addresses, and any information solely related to children, including children's names, from their tax returns.  Defendants may also redact the names of clients who were not former Hirtle clients, in keeping with our previous ruling.

Defendants should also make a good faith effort to produce documents in their custody, care, possession, or control that are responsive to Plaintiffs' request and tend to show either their overall financial status or profits.

**IV.     CONCLUSION**

For the foregoing reasons, the Motion for Reconsideration is granted as to the tax returns for Don Callaghan and denied as to the tax returns and financial information for Curt Thompson and GSIS.  An appropriate order follows.

                                                    **BY THE COURT:**


                                                    */s/ R. Barclay Surrick*
                                                    **R. BARCLAY SURRICK, J.**

13