IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HIRTLE CALLAGHAN HOLDINGS, INC, ET AL. | : <br> : <br> :    CIVIL ACTION <br> v.                        : <br> :    NO. 18-2322 <br> CURT R. THOMPSON, ET AL.      : |

**MEMORANDUM**

**SURRICK, J.**                                                                                                                     **JUNE 7, 2022**

Presently before the Court is Defendants' Motion to Dismiss Certain Counts of Plaintiffs' Amended Complaint (ECF No. 53) and Plaintiff's opposition thereto (ECF No. 55). For the following reasons, this Motion will be granted in part and denied in part. This matter involves an alleged scheme by a former Hirtle employee, Curt Thompson, and his new employer, Global Strategic Investment Solutions, LLC (GSIS), to poach Hirtle's clients for GSIS' benefit. This poaching of clients was allegedly in violation of a series of non-solicitation and non-compete agreements between Thompson and Hirtle which were agreed to by the parties while Thompson was employed by Hirtle. After Hirtle amended its Complaint in this matter to include multiple new tort claims, Defendants brought this Motion to Dismiss each of those claims. Defendants move to dismiss the tort claims against Thompson based on the gist of the action doctrine. They also move to dismiss the tort claims against all defendants based upon the statute of limitations. This motion will be granted in part and denied in part. Each of the tort claims will be dismissed against defendant Thompson, because they violate the gist of the action doctrine. The motion will be denied as to the remaining counts against the other defendants because they do not violate the applicable statute of limitations.

I.      BACKGROUND

This matter stems from various contracts and agreements which arose out of Defendant Curt Thompson's employment with Plaintiff Hirtle.  Thompson was employed by Plaintiff Hirtle in 1994 and later became principally responsible for Hirtle's Scottsdale Arizona office.  (Am. Compl. ¶ 17-18; ECF No. 52.)

A.      The Agreements

On September 29, 2006, Hirtle and Thompson entered into a Stock Award Agreement (SAA) which provided Thompson with 659 shares of non-voting common stock.  (*Id*. at ¶ 20-21.)  In consideration for this stock, the SAA contained a provision that prohibited "Thompson from soliciting Hirtle's customers for a competing business or interfering with, or attempting to disrupt, the relationship between Hirtle and its customers during his employment and for eighteen months following the termination of his employment with Hirtle."  (*Id*. at ¶ 23.)  The SAA also stated that "in the event that Thompson violates or breaches the confidentiality and/or non-solicitation covenants in the [SAA], Hirtle is entitled to injunctive relief, as well as any other relief available under the agreement, and the non-voting common stock awarded under the agreement is forfeited without payment."  (*Id*. at ¶ 24.)

On February 28, 2011, Hirtle and Thompson entered into a Restricted Unit Award Agreement (RSU Agreement), through which Thompson received 408 Restricted Stock Units, each representing the right to receive one share of non-voting common stock.  (*Id*. at ¶ 25.)  Again on March 12, 2012, Hirtle and Thompson entered into another RSU Agreement, whereby Thomas received 1,117 Restricted Units, each representing the right to receive one non-voting Class C Common Unit.  (*Id*. at ¶ 26.)  Each year from 2011 through 2017, Thompson entered

into an additional RSU Agreement with Hirtle. (*Id*. at ¶ 27.) Each of these agreements contained identical or nearly identical restrictions on confidentiality, unfair competition, and non-solicitation, and imposed on Thompson a fiduciary duty to Hirtle. (*Id*. at ¶ 27-28.) Pursuant to these Agreements, Thompson was precluded from "directly or indirectly" soliciting, contacting, or interfering with Hirtle's clients during his employment and for a period of eighteen months after his termination. (*Id*. at ¶ 29-30.)

      B.      **The Allegedly Wrongful Conduct**

In the fall of 2017, Thompson planned to leave Hirtle and join GSIS, a similar investment advisor company, which was owned by Defendant Donald Callaghan, a former owner of Hirtle. (*Id*. at ¶ 46-47.) Thompson and Callaghan allegedly agreed that Thompson would become joint owner of GSIS, and that they would solicit and steal Hirtle's clients to convert them to new clients of GSIS. (*Id*. at ¶ 43-47.) While Thompson was still employed at Hirtle, he allegedly provided GSIS his entire client list, and Defendants collectively drafted an email to Thompson's clients at Hirtle, which allegedly misrepresented the nature of Thompson's non-solicitation and confidentiality agreements. (*Id*. at ¶ 49-56.) After Thompson left Hirtle in January of 2018, Defendants sent this mass email to Hirtle clients advising that Thompson was leaving Hirtle and joining GSIS, without disclosing Thompson's non-solicitation and confidentiality agreements. (*Id*. at ¶ 66.) After this email was sent, Callaghan allegedly continued to indirectly solicit Hirtle's clients on behalf of GSIS and Thompson. (*Id*. at ¶ 76.) As a result of this scheme, GSIS apparently went from having no regulatory assets under management in December of 2017 to over $490 million in assets at the end of 2019, and over $710 million at the end of 2020. (*Id*. at ¶ 87.) Plaintiff alleges that virtually all of these assets arose from Hirtle clients that were wrongfully stolen by Defendants. (*Id*.) Hirtle alleges that these actions by Thompson are clear

violations of Thompson's SAA and RSU Agreements, specifically the non-solicitation, confidentiality, and fiduciary duty provisions.

### C. The Claims and the Instant Motion

Plaintiff filed its original Complaint on June 4, 2018 asserting the following claims: Count I (Declaratory Judgment), Count II (Breach of Contract), Count III (Permanent Injunction), and Count IV (Misappropriation of Trade Secrets). Thereafter on August 18, 2021, Plaintiff amended its Complaint to include the following additional tort claims: Count II (Breach of Fiduciary Duty against Thompson, co-trustee Lisa Thompson, and the Trust), Count III (Common Law Fraud/Concealment against Thompson, co-trustee Lisa Thompson, and the Trust), Count IV (Tortious Interference with Non-Solicitation and Confidentiality Restrictions against GSIS), Count V (Tortious Interference with Customer Relationships against GSIS, Thompson, co-trustee Lisa Thompson, and the Trust), Count VI (Conversion of Business Information against GSIS, Thompson, co-trustee Lisa Thompson, and the Trust), Count VII (Common Law Unfair Competition against GSIS, Thompson, co-trustee Lisa Thompson, and the Trust), Count VIII (Common Law Fraud against GSIS, Thompson, co-trustee Lisa Thompson, and the Trust), Count IX (Common Law Negligent Misrepresentation against GSIS, Thompson, co-trustee Lisa Thompson, and the Trust), Count X (Civil Conspiracy against GSIS, Thompson, co-trustee Lisa Thompson, and the Trust), and Count XI (Aiding and Abetting Breach of Fiduciarily Duty and Other Tortious Conduct against GSIS). Defendants now move to dismiss each of these tort claims.

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *New Jersey Carpenters &*

*the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint has facial plausibility when there is enough factual content 'that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When considering a motion to dismiss, the Court must accept as true all factual allegations in the plaintiff's complaint and construe the facts alleged in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See*, *id*. at 211. Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . ." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679. This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (*quoting Twombly*, 550 U.S. at 556).

**III.    DISCUSSION**

Defendants move to dismiss a series of newly added tort claims in this matter based upon two separate theories. First, Defendants move to dismiss Counts II (Breach of Fiduciary Duty), III (Fraud and Concealment), V (Tortious Interference), VI (Conversion of Business Information), VII (Unfair Competition), VIII (Fraud), IX (Negligent Misrepresentation), and X (Civil Conspiracy) against Defendant Curt Thompson based upon the gist of the action doctrine. In addition, Defendants move to dismiss all newly added counts (Counts II through XI) against

all defendants based upon Pennsylvania's two-year statute of limitations. We will grant the motion as to all counts against Defendant Thompson and will deny it as to all counts against the other Defendants, as set forth below.

### A.  Dismissal Based Upon the Gist of the Action Doctrine

The gist of the action doctrine is "designed to maintain the conceptual distinction between breach of contract claims and tort claims" by precluding plaintiffs from recasting ordinary breach of contract claims into tort claims. *Nova Design Techs., LTD v. Walters*, 875 F. Supp. 2d 458, 466 (E.D. Pa. 2012) (citing *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002)).

Determination of whether the gist of the action doctrine applies "calls for a fact-intensive judgment as to the true nature of a claim." *Milo, LLC v. Procaccino*, No. 16-5759, 2020 U.S. Dist. LEXIS 64122, at *21 (E.D. Pa. Apr. 13, 2020) (citing *Williams v. Hilton Grp. PLC*, 93 F. App'x 384, 386 (3d Cir. 2004)). "To evaluate whether the gist of the action doctrine applies, a court must identify the duty breached, because 'the nature of the duty alleged to have been breached . . . [is] the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract.'" *Downs v. Andrews*, 639 F. App'x 816, 819 (3d Cir. 2016) (quoting *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014)). Because the gist of the action doctrine requires a fact-intensive analysis, courts are cautious about dismissing tort claims at the motion to dismiss stage based upon this doctrine. *Lindsley v. Am. Honda Motor Co.*, No. 16-941, 2017 U.S. Dist. LEXIS 105586, at *24 (E.D. Pa. July 7, 2017) (citing *Victor Buyck Steel Construction v. Keystone Cement Co.*, No. 09-2941, 2010 U.S. Dist. LEXIS 30897, at *4 (E.D. Pa. Mar. 30, 2010).

The mere existence of a contractual relationship between the parties, however, does not automatically preclude one party from bringing a tort claim against the other. *ATD-American Co. v. Krueger Int'l*, No. 12-32, 2012 U.S. Dist. LEXIS 55650, at *21 (E.D. Pa. Apr. 19, 2012). When a plaintiff alleges claims that sound in both tort and contract, Pennsylvania courts will examine the claims to determine whether the "gist" of the claims sound primarily in contract or in tort. *Id*. When conducting this analysis, tort claims will be barred if: (1) they arise solely from a contract between the parties, (2) the duties allegedly breached were created by the contract itself; (3) the liability stems from a contract; or (4) the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract. *Id*. (citing *eToll*, 811 A.2d at 19). If the duties which form the basis for the tort claim are "intertwined" with the contractual obligations, then the claim sounds in contract. However, if the duties are "collateral" to the contract, the claim sounds in tort. *Id*. at 22. If the court determines that the gist of the action doctrine applies, the tort claims are barred.

Here, Defendants seek dismissal of all tort claims based upon this doctrine against Defendant Thompson only.

      1.    *Count II: Breach of Fiduciary Duty*

A breach of fiduciary duty claim is barred by the gist of the action doctrine if the fiduciary duty allegedly broken is based in the defendant's contractual obligations. *DePuy Synthes Sales, Inc. v. Globus Med., Inc.*, 259 F. Supp. 3d 225, 234 (E.D. Pa. 2017) (citing *Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 2d 491, 499 (E.D. Pa. 2008)). Typically, breach of fiduciary duty claims are not barred under the gist of the action doctrine if the fiduciary duty "goes beyond the particular obligations contained in the parties' contract." *Id*. at 235. However,

7

breach of fiduciary duty claims are barred by the doctrine if there are "no allegations of breach of fiduciary duty. . . that transcend or exist outside of the parties' contractual agreements." *Id.*

Courts in this district have come out differently on breach of fiduciary duty claims under the gist of the action doctrine based upon the different factual circumstances that each case presents. For example, in *Freedom Medical*, the court held that the complaint sufficiently alleged that defendant had a confidential relationship with his employer which could give rise to independent fiduciary duties under Pennsylvania common law. *Freedom Medical v. Gillespie*, 634 F. Supp. 2d 490, 496 (E.D. Pa. 2007). In addition, we previously held in *PNC Mortgage* that employees owe common law fiduciary duties to their employers, outside the existence of a contract, which requires them to refrain from competing with their employer during the course of their employment. *PNC Mortg. v. Superior Morg. Corp.*, No. 09-5084, 2012 U.S. Dist. LEXIS 25276, at *79-80 (E.D. Pa. Feb. 27, 2012). Therefore, the gist of the action doctrine did not bar plaintiff's claim for breach of fiduciary duty in that matter because the parties' obligations were not defined by the terms of the employment contract, but rather by larger social policies (i.e., the law of torts). *Id.* at 81.

However, courts in this district have dismissed breach of fiduciary duty claims based on the gist of the action doctrine where the duties outlined in the contract are "inextricably intertwined" with the alleged breaches of fiduciary duties. *See DePuy*, 250 F. Supp. 3d at 236; *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 621 (E.D. Pa. 2010). In *DePuy*, the Court held that the gist of the action doctrine barred the plaintiff's breach of fiduciary duty claim because the actions that formed the basis of the breach were identical under both the breach of contract and the breach of fiduciary duty claims. *Id.* The court reasoned that the alleged violations mirrored each other almost identically and no breaches were identified that

"transcended" the breach of contract allegations. *Id*. Similarly, in *Brown & Brown*, the Court held that the breaches were "inextricably intertwined" with the contractual obligations and the complaint's allegations showed that the source of the employees' duties was the employment contract. *Brown & Brown*, 745 F. Supp. at 621.

Finally, in *Certainteed Ceilings* the court dismissed plaintiff's breach of fiduciary duty claim because the conduct alleged under the breach of fiduciary duty and breach of contract claims were identical. *Certainteed Ceilings Corp. v. Aiken*, No. 14-3925, 2015 U.S. Dist LEXIS 10881, at *29 (E.D. Pa. Jan. 29, 2015). *Certainteed Ceilings* is on all fours with this matter. The court explained that the exact conduct plaintiff alleged as the breach of a fiduciary duty—disclosing plaintiff's confidential information and trade secrets—was contemplated in the non-compete agreement. *Id*. The agreement broadly described defendant's duties, defined the confidential information at issue, and even extended that duty beyond termination of employment. *Id*. In short, that plaintiff alleged no new facts for the breach of fiduciary duty claim that transcended the employee's obligations under the contract. *Id*. at 29-30. Therefore, the defendant's duty not to use or disclose the confidential information was grounded in his contractual obligations and was "imposed by mutual consensus." *Id*. at 30 (citing *Brown & Brown*, 745 F. Supp at 621). For these reasons, the court dismissed the claim based upon the gist of the action doctrine. *Id*.

The same is true here. The SAA and RSU Agreements explicitly stated that Thompson had a fiduciary duty to Hirtle, which would be violated by the disclosure of confidential information, including Hirtle's client list, during or for eighteen months after termination. Plaintiff alleges the exact same conduct to support both the breach of contract claim and the breach of fiduciary claim: that Thompson disclosed client information and participated in a

9

scheme to poach Hirtle's clients during and after his employment.  This is the exact conduct explicitly covered by the Agreements in this matter.  (*See* Am. Compl. at ¶ 30 ("[Thompson] . . . agrees that for the entire period of [his] service, and for a period of eighteen (18) months after termination of [his] service . . . [Thompson] will not. . . directly or indirectly, solicit business from or otherwise contact any Customer of the Company for the benefit of a Competing Business or interfere with, or attempt to disrupt the relationship, contractual or otherwise, between the Company and any of its customers.").)  Clearly, the duties that Plaintiff claims were breached were imposed by "mutual consensus" and are therefore inextricably intertwined with the Agreements between Hirtle and Thompson.

Plaintiff also alleges that Thompson was in a position of trust and confidence with Hirtle, which, in other cases, has formed a separate basis for common law fiduciary duties.  However, this is inconsequential in this case.  In *Certainteed Ceilings*, the court disregarded the fact that plaintiff pled that defendant was in a position of trust and confidence with his employer because plaintiff failed to allege facts to support this assertion.  *Certainteed Ceilings*, 2015 U.S. Dist. LEXIS 10881, at *31.  Similarly here, Hirtle alleges no supporting facts for this assertion which shows that Thompson had a separate common law fiduciary duty to his employer.  In fact, Thompson's fiduciary duties to Hirtle are explicitly imposed by the Agreements themselves.  (See Am. Compl. at ¶ 29 ("The Confidential Information is the property of [Hirtle], and [Thompson] agrees that the use, misappropriation or disclosure of the Confidential Information . . . would constitute . . . a breach of [Thompson's] fiduciary duty to [Hirtle].").)  Accordingly, the basis for this action is the Agreements between Hirtle and Thompson, not common law torts or broader social duties.  Therefore, plaintiff's breach of fiduciary duty claim is barred by the gist of the action doctrine and will be dismissed.

>    2. *Counts III, VII, & IX: Common Law Fraud, Fraudulent Concealment, and Negligent Misrepresentation*

Claims of fraud or fraudulent inducement are not automatically barred by the gist of the action doctrine. Where claims of fraud are collateral to, rather than intertwined with, the contractual obligations at play, the fraud claims are not barred. *ATD-American Co. v. Krueger Int'l, Inc.*, 2012 U.S. Dist. LEXIS 55650, at *26. However, where claims of fraud and misrepresentation involve matters that became contractual duties, the claims are intertwined with plaintiff's obligations under the contract and are barred by the gist of the action doctrine. *Bryn's Quality Plus, LLC v. Shaffer Builders, Inc.*, No. 07-2311, 2008 U.S. Dist. LEXIS 61713, at *12-18 (E.D. Pa. Aug. 12, 2008); *United States Claims, Inc. v. Saffren & Weinberg, LLP*, No. 07-0543, 2007 U.S. Dist. LEXIS 88022, at *11 (E.D. Pa. Nov. 29, 2007) ("[W]here the fraud or negligent misrepresentation clearly arose from the contract, courts have been quick to apply the gist of the action doctrine.").

In arguing that these claims should not be dismissed, Hirtle cites to *Norfolk S. Ry. Co. v. Pittsburgh & W. Va. R.R.*, 870 F.3d 244 (3d Cir. 2017) for the proposition that fraud claims are not barred by the gist of the action doctrine because they do not arise from the contractual relationship. Rather, Hirtle asserts, fraud and misrepresentation claims arise from the defendant's independent fraudulent acts/omissions which are instead governed by the "broader social duty owed to all individuals." However, this proposition misstates the law and misinterprets *Norfolk*. The facts in *Norfolk* are easily distinguishable from our matter. There, defendant PWV entered into a lease with plaintiff Norfolk which required PWV to get the consent of Norfolk before issuing stock. *Id.* at 247-49. During discussions to obtain plaintiff's consent, PWV assured Norfolk that the proposed document "contain[ed] all available information of PWV's plans at [that] point." *Id.* at 256. However, the proposed document

11

omitted portions of PWV's plans which had been previously discussed with Norfolk in detail. *Id.* Based upon this false information, Norfolk issued its consent to PWV for the proposal. *Id.*

On summary judgment, PWV argued that the gist of the action doctrine precluded Norfolk's fraud claim because the cause of action was grounded in the contract. The district court disagreed, holding that Norfolk's claim did not arise out of the contractual relationship between the parties, but rather from PWV's fraudulent misrepresentations and omissions in seeking Norfolk's consent. *Norfolk*, 153 F. Supp. 3d at 815. The court explained, the contract merely served as the vehicle which established the relationship between the parties during which the fraud was committed and was therefore "collateral" to the fraud clam. *Id*. The contract required PWV to seek consent from Norfolk and PWV complied with that requirement. However, it procured that consent through fraudulent misrepresentations and omissions. *Id*. Those misrepresentations and omissions distinguished Norfolk's tort claim from his breach of contract claim. *Id*. For these reasons, the Third Circuit affirmed that the gist of the action doctrine did not bar Norfolk's fraud claim. *Norfolk*, 870 F.3d at 256.

Unlike in *Norfolk*, this matter lacks any similar circumstances which may support a fraud claim outside the bounds of the Agreements. Hirtle does not allege any fraudulent conduct or misrepresentations that do not relate directly to duties outlined in the contract. The Agreements in this matter do not serve solely as the "vehicle which established the relationship" between the parties. The alleged acts and omissions which support the fraud and misrepresentation claims in this matter are exactly the same as the acts and omissions which serve as the breach of the parties' Agreements. In other words, the claims of fraud and misrepresentation involve matters which *are* the contractual duties set out under the Agreements, they are not "collateral to" them. *See Bryan's Quality Plus*, 2008 U.S. Dist. LEXIS 61713, at *12 (applying the gist of the action

doctrine where "defendants' claims of fraud and misrepresentation involve[d] matters that became contractual duties."); *Saffren & Weinberg,* 2007 U.S. Dist. LEXIS 88022, at *11 (E.D. Pa. Nov. 29, 2007) ("where the fraud or negligent misrepresentation clearly arose from the contract, courts have been quick to apply the gist of the action doctrine."). Thompson's alleged fraudulent conduct and misrepresentations are inextricably intertwined with his obligations under the contract and, as such, the fraud, fraudulent concealment, and negligent misrepresentation claims are duplicates of the breach of contract claim. Therefore, they are barred by the gist of the action doctrine.

### 3. Count V: Tortious Interference with Customer Relationships

The gist of the action doctrine bars a tortious interference claim if it is not independent of the breach of contract claim. *DePuy*, 259 F. Supp at 243 (*Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 2d 491, 505 (E.D. Pa. 2008). A tortious interference claim will be dismissed if it is "inextricably interwoven" with the contractual duties at issue in the case. *Id*.

Again, *DePuy* is factually similar and therefore instructive. In *DePuy*, plaintiff asserted that defendants tortiously interfered with its customer relationships without justification with the intent to injure plaintiff. *DePuy*, 259 F. Supp. at 243. However, defendants' employment agreement contained a specific provision in which defendants agreed not to "directly or indirectly . . . engage in recruitment or solicitation of other employees of your [employer] or any [company] to join a [competitor]." *Id*. The *DePuy* court held that the tortious interference claim was "completely subsumed" by this provision of the contract and had no independent basis in social policy. *Id*. Since defendants alleged interference in plaintiff's business relations were "inextricably interwoven" with their contractual duties, the gist of the action doctrine barred the tortious interference claim. *Id*.

13

The same is true here. Hirtle alleges that Thompson purposefully interfered with Hirtle's pre-existing contractual relationships with individual and institutional clients that engaged Hirtle to manage their assets. This is the exact same conduct which is prohibited by the SAA and RSU Agreements between Thompson and Hirtle. In fact, Hirtle explicitly alleges the following in its tortious interference claim:

> At all relevant times, [Thompson was] aware of [Hirtle's contractual relationship with its clients], and aware that by virtue of, inter alia, the RSU Agreements, Thompson was precluded from directly or indirectly (1) soliciting Hirtle clients and/or contacting Hirtle clients personally and through Thompson's partner as a joint owner and new investment advisor of a "Competing Business", (2) interfering in any way with Hirtle's client relationships, and (3) divulging to third parties Hirtle's confidential information for the benefit of his own competing enterprise.
>
> . . . Based upon the conduct more fully described above, which included taking part in the scheme . . . to knowingly, intentionally and maliciously violate the non-solicitation and confidentiality restrictions to which Thompson was bound, in order to harm Hirtle, Defendants named in this Count and their agents lacked privilege or justification for their conduct.

(Am. Compl. at ¶ 120, 122.) Clearly, the tortious interference claim and the breach of contract claim are "inextricably interwoven." The Agreements cover the exact conduct which is said to be the tortious interference with Hirtle's business relations and Hirtle even uses the Agreements to support its basis for this claim in the Complaint. Therefore, the tortious interference claim is "completely subsumed" by the contract and the gist of the action doctrine applies.

### 4. Count VI: Conversion of Business Information

Conversion claims have been dismissed by the gist of the action doctrine where the alleged entitlement to the property at issue arises solely from the contract between the parties. *Brown & Brown*, 745 F. Supp. at 622. However, when a plaintiff has an independent property interest in the thing that is subject to the conversion claim, the gist of the action doctrine

14

does not bar the conversion claim, even when the property is also the subject of the contract. *Id*. at 623.

In this matter, the "business information" that Thompson allegedly converted is Thompson's "customer list and details regarding their portfolios and assets under management with Hirtle (such as each clients' preferences, trading history, asset allocation, performance history, tax status, and Hirtle fee rate)." (Am. Compl. at ¶ 127.) Therefore, the key question is whether Hirtle has an independent property interest in its client lists and details regarding such clients. A similar question is raised in *Brown & Brown*, which is cited by both Plaintiff and Defendants as instructive here.

In *Brown & Brown*, the court differentiated between business information in which plaintiff did and did not have an independent property interest. *Brown & Brown*, 745 F. Supp. 2d at 623-24. Specifically, the court held that plaintiff had a property interest in the allegedly converted "documents, information, marketing materials, and promotional materials," which prevented the application of the gist of the action doctrine with respect to that "business information." *Id*. at 623. In contrast, the court held that to the extent plaintiff alleged that defendants converted its "customers and business," plaintiff had no express property interest in these items outside of the non-solicitation employment agreements between the parties. *Id*. at 623-624. With respect to this portion of the claim, the court explained that the conversion of customers and business was "inextricably intertwined" with the employment agreements and that the gist of the action doctrine applied. *Id*.

Here, Hirtle alleges that the "business information" that has been converted by Thompson is customer lists and details about such customers. Hirtle does not have an independent property interest in these items outside of the non-solicitation agreement between Hirtle and Thompson.

*See e.g.*, *Brown & Brown*, 745 F. Supp. 2d at 623 (citing *Partners Coffee Co., LLC v. Oceana Servs. & Prods. Co.*, No. 09-236, 2009 U.S. Dist LEXIS 113209, at *20 (W.D. Pa. Dec. 3, 2009) (holding that "contacting customers" was intertwined with the terms of the contract and the gist of the action doctrine barred the conversion claim as to that portion of the claim)). The Agreements between Hirtle and Thompson here specifically addressed this issue by providing that Thompson was prohibited from soliciting Hirtle's customers during his employment and for eighteen months afterward. Under these circumstances, like in *Brown & Brown*, Hirtle's alleged "conversion of customers and business is inextricably intertwined" with the non-solicitation agreement. Therefore, the gist of the action doctrine applies and bars this claim.

        5.        *Count VII: Unfair Competition*

The tort of "unfair competition" may be recognized in Pennsylvania where there is evidence of, among other things, "misrepresentation, tortious interference with contract, improper inducement of another's employees, and unlawful use of confidential information." *Synthes, Inc. v. Emerge Med., Inc.*, No. 11-1566, 2012 U.S. Dist. LEXIS 134886, at *24 (E.D. Pa. Sep. 19, 2012) (citing *Synthes (U.S.A.) v. Globus Med., Inc.*, No. 04-1235, U.S. Dist. LEXIS 19962, at *8 (E.D. Pa. Sept. 14, 2005). In this matter, Hirtle alleges the following in its claim for unfair competition:

> As set forth above, the conduct of Defendants named in this Count and their agents in soliciting and inducing Thompson to join GSIS and violate his fiduciary duties and his non-solicitation and confidentiality restrictions, for the purpose of having Thompson commit wrongs such as disclosing Hirtle's confidential information and enticing away Hirtle's customers, constitutes common law unfair competition.

(Am. Compl. at ¶ 133.) While the allegations set forth in the complaint do not even appear to be directed at Defendant Thompson, but rather at Defendant GSIS, to the extent that they apply to Thompson, the gist of the action doctrine bars this claim.

As is the case with the other causes of action addressed *supra*, a claim for unfair competition must articulate a "broader set of wrongful acts" which would bring the claim beyond the scope of the contract at issue. *See, e.g., Cunningham Lindsey U.S., Inc. v. Bonnani*, No. 18-2528, 2014 U.S. Dist. LEXIS 55250, at *23 (M.D. Pa. Apr. 22, 2014). Where, by contrast, "the purported misrepresentation extends beyond a failure to adhere to any provision of the contract, [a] claim sounds primarily in tort and may be maintained concurrently with [a] breach of contract action." *Sköld v. Galderma Labs., L.P.*, 99 F. Supp. 3d 585, 602 (E.D. Pa. 2015).

In this matter, it appears that Hirtle's unfair competition claim is premised on Thompson's alleged breach of fiduciary duties and/or efforts to tortiously interfere with Hirtle's clients, as prohibited by the SAA and RSU Agreements. Because the allegations in the complaint in support of Hirtle's breach of fiduciary duty, tortious interference, and conversion claims are duplicative of Hirtle's breach of contract claim, the gist of the action barred each of these tort claims, as discussed *supra*. As Hirtle's unfair competition claim is premised on the identical actions and allegations as the other tort claims, the unfair competition claim is also barred by the gist of the action doctrine. *Cf.*, *Synthes, Inc. v. Emerge Med., Inc.,* 2012 U.S. Dist. LEXIS 134886, at *46 (allowing unfair competition claim based on tortious interference and conversion claims to proceed because the underlying claims were not barred by the gist of the action doctrine). Hirtle has failed to articulate a "broader set of wrongful acts" which would bring its unfair competition claim beyond the scope of the gist of the action doctrine. It's unfair competition claim is premised on the exact same conduct as the breach of fiduciary duty and tortious interference claims, which have also been dismissed. There are simply no allegations that transcend the Agreements between the parties. Therefore, Hirtle's unfair competition claim is also barred by the gist of the action doctrine.

6. *Count X: Civil Conspiracy*

A conversion claim, under Pennsylvania law, requires a viable distinct underlying tort as a predicate for liability. *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999); *Accurso v. Infra-Red Servs.*, 23 F. Supp 3d 494, 513 (E.D. Pa. 2014). As each of the underlying torts in this matter have been dismissed based upon the gist of the action doctrine, Hirtle's conspiracy claim no longer has a viable predicate for liability and therefore must also be dismissed.

**B.** **Dismissal Based Upon the Statute of Limitations**

Pennsylvania imposes a two-year statute of limitations on tort claims. 42 Pa. C.S. § 5524. In this matter, the original Complaint was filed on June 4, 2018. Hirtle then amended its Complaint on August 18, 2021. Though Defendants argue that these newly added claims are time-barred, we agree with Hirtle that these claims relate back to the date of the original complaint and are not barred by the statute of limitations.

When a party seeks leave to file an amended complaint adding a new claim after the statute of limitations has expired, the requested leave may only be granted if the new claims or parties relate back to the filing of the original complaint. Fed. R. Civ. P. 15(c); *Estate of Grier v. Univ. of Pa. Health Sys.*, No. 07-4224, 2009 U.S. Dist. LEXIS 48905, at *6 (E.D. Pa. June 11, 2009). Rule 15(c)(1)(B) requires that new claims arise out of the same transaction or occurrence that gave rise to the claims contained in the original complaint. *Id*. The relevant question is whether there is a common core of operative facts uniting the original and newly asserted claims. *Feldman v. Am. Asset Fin., LLC*, 534 B.R. 627, 637 (E.D. Pa. 2015) (citing *Mayle v. Felix*, 545 U.S. 644, 659 (2005)).

In this matter, both the original claims and the newly added claims arise from the same common core of operative facts.  The original Complaint seeks recovery based upon the conduct of Defendants Thompson and GSIS that led to Thompson leaving Hirtle, his partnership with GSIS, and their alleged poaching of Hirtle's clients in violation of Thompson's SAA and RSU Agreements with Hirtle.  All of the new claims arise from these same facts.  Therefore, the newly added claims relate back to the original Complaint of June 4, 2018 and are not barred by the statute of limitations.

## IV.  CONCLUSION

For the foregoing reasons, the motion is granted in part and denied in part.  The motion is granted as to Counts II (Breach of Fiduciary Duty), III (Fraud and Concealment), V (Tortious Interference), VI (Conversion of Business Information), VII (Unfair Competition), VIII (Fraud), IX (Negligent Misrepresentation), and X (Civil Conspiracy) against Defendant Curt Thompson.  The motion is denied as to all counts (Counts II through XI) against the remaining Defendants.

**BY THE COURT:**


*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**